J-S69010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| FRANCIS ANTHONY MILLIARD | |
| Appellant | No. 1948 WDA 2016 |

Appeal from the Judgment of Sentence July 20, 2016
In the Court of Common Pleas of Elk County
Criminal Division at No(s): CP-24-CR-0000284-2012

BEFORE:  BOWES, RANSOM, JJ. and STEVENS, P.J.E.*

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 30, 2017**

Francis Anthony Milliard appeals from the aggregate judgment of sentence of twenty to forty years incarceration imposed following his convictions for attempted homicide, aggravated assault, and recklessly endangering another person.  We affirm.

On June 24, 2011, Tony Asti came to the Ridgway Police Department to report that his son, Todd Asti, had been seriously injured.  Officer Shawn Geci proceeded to Todd's home, where he saw Todd on the floor, naked from the waist down and covered in blood and some fecal matter.  N.T., 2/2/16, at 43.  Todd was transported to the hospital as he was unconscious and his breathing labored.  *Id*.  Doctor George Castellano, the emergency room physician, deemed the injuries to be life threatening and sent Todd to

---

* Former Justice specially assigned to the Superior Court.

Pittsburgh for emergency neurosurgery. *Id*. at 115-16. Todd had sustained a traumatic brain injury, and needed several surgeries, including cutting a hole in his head to relieve the swelling of the brain. N.T., 2/3/16, at 63-66.

The crime remained unsolved until July of 2012, when the authorities received a tip from Matthew Glass. Michael Asti, the victim's son, told Mr. Glass that his father had implicated Appellant, the victim's distant cousin, as the responsible party. N.T., 2/2/16, at 135. Mr. Glass was friendly with Pennsylvania State Police Corporal Greg Agosti, and called him on July 18, 2012, with that information. *Id*. at 147. Corporal Agosti contacted the Ridgway Police Department and learned of the open investigation.

Based on this information, Corporal Agosti and Officer Geci went to visit the victim on July 23, 2012, at the NeuroRestorative Center in Fairview, Pennsylvania, where he was recovering from his injuries. *Id*. at 155. Todd was eager to talk and agreed to give a recorded statement. He related that he often bought marijuana from Appellant and owed him about $300. N.T., 2/3/16, at 32. Todd recalled being hit in the head two or three times, but had difficulty remembering what happened. *Id*. at 31. When asked who attacked him, Todd stated, "The only person I can think of is [Appellant]." *Id*. Todd believed that Appellant's son may have been present.

Meanwhile, that same day Officer Bridgette Asti[1] went to the Elk County jail, where Appellant's son Anthony was incarcerated on an unrelated matter. *Id*. at 114. Anthony agreed to speak to Officer Asti, and gave a recorded statement which was later played at trial and admitted as substantive evidence.[2] Therein, Anthony stated that Appellant regularly sold marijuana to Todd. *Id*. at 77. On the day of the attack, Anthony accompanied Appellant on a trip to collect money owed. Anthony thought the transaction was taking too long, so he walked inside and observed a lot of blood. The victim was hunched over, and Anthony saw Appellant strike the victim in the head with an object he described as a baseball bat-like club. *Id*. at 81, 84.

On July 23, 2012, Officer Asti visited Anthony a second time to take another statement, which, like the first, was played to the jury. On the tape, Officer Asti informs Anthony that Todd Asti indicated that Anthony was present when the attack started. At this point, Anthony admitted that he went to the door to get the money. When Todd did not pay, Anthony called his father. Anthony stated that Appellant was high on cocaine and enraged.

---

[1] The record does not indicate whether the officer is related to the victim.

[2] Anthony agreed that he spoke to the police, but claimed that he was in detox while incarcerated, that the statements were coerced, and in any event were untruthful in all respects.

Appellant was convicted of the aforementioned crimes and received his sentence on July 20, 2016. At sentencing, Appellant expressed dissatisfaction with counsel, who was permitted to withdraw. The trial court appointed new counsel by order docketed July 25, 2016. In the interim, Appellant mailed a *pro se* post sentence motion, which was timely filed. Additionally, new counsel filed post-sentence motions on August 4, 2016, which were untimely. However, the trial court treated the counseled motion as amending the *pro se* motions, as Appellant was representing himself when he filed his motions due to counsel's withdrawal, and denied them. Appellant filed a timely appeal. Appellant and the trial court complied with Pa.R.A.P. 1925, and the matter is now ready for our review. Appellant presents the following two questions.

> I. Whether the lower court erred in entering a verdict based on insufficient evidence to show an intent to kill in regard to attempted homicide?
>
> II. Whether the lower court erred in entering verdicts against the weight of the evidence as to all charges?

Appellant's brief at 5.

Appellant's first claim attacks the sufficiency of the evidence to support the charge of attempted homicide. Whether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Walls***, 144

A.3d 926, 931 (Pa.Super. 2016) (citation omitted). In conducting our inquiry, we

> examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

**Commonwealth v. Doughty**, 126 A.3d 951, 958 (Pa. 2015).

Appellant's sufficiency challenge is limited to the quality of the Commonwealth's evidence to establish, as is required, that Appellant acted with the specific intent to kill. **Commonwealth v. Geathers**, 847 A.2d 730, 734 (Pa.Super. 2004). It is well-settled that the specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the body. **Commonwealth v. Rega**, 933 A.2d 997, 1009 (Pa. 2007).

Appellant argues that cases applying that presumption commonly involve firearms, which markedly differ from the use of a club. Appellant suggests that something more than the use of the club is required, citing **Commonwealth v. Terry**, 521 A.2d 398 (Pa. 1987), a case where a murder resulted from the beating of the victim in the head with a baseball bat. Our Supreme Court's opinion, after discussing whether that fact could support an inference of intent to kill, stated, "In addition, appellant admitted committing the crime to State Trooper Joseph Moran. He told Trooper Moran that he took a baseball bat and started looking for someone to kill." **Id**. at 412.

Appellant suggests that *Terry* should be construed as requiring the presence of additional evidence establishing an intent to kill when a firearm was not involved.

We disagree. First, Appellant overlooks the fact that "deadly weapon" is specifically defined by 18 Pa.C.S. § 2301, which applies to all offenses involving danger to a person:

> **"Deadly weapon."** Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

18 Pa.C.S. § 2301. Therefore, Appellant's parsing of *Terry* is untenable. Obviously, statements made by a perpetrator indicating an intent to kill are relevant and indicative of an intent to kill; however, it does not follow that the absence of such statements prevents a finding of an intent to kill.

Viewing all the evidence admitted at trial in the light most favorable to the verdict winner, we conclude that Appellant's claim must fail. The Commonwealth introduced, as substantive evidence, the prior recorded statement of Appellant's son who walked in during the attack and saw Appellant strike the victim in the head with an object similar to a baseball bat. This evidence, combined with the substantial injuries suffered by the victim, suffices to support a finding that the severe beating was intended to kill.

Additionally, we note that Appellant had a motive to kill, which constituted circumstantial evidence of the intent to kill. In ***Commonwealth v. Fitzpatrick***, 159 A.3d 562 (Pa.Super. 2017), we found that an intent to kill was established by purely circumstantial evidence. Therein, Fitzpatrick was convicted of first-degree homicide. Emergency personnel responded to a reported accident scene, where Fitzpatrick's wife was found unresponsive next to a creek. She later died of drowning. Foul play was not initially suspected. However, authorities soon began to investigate Fitzpatrick due to notes in the victim's effects which indicated that her husband should be suspected if something were to happen to her. Additionally, Fitzpatrick was having a non-sexual affair with another woman, and stood to gain $1.7 million in insurance proceeds if his wife were to die. Finally, the victim had injuries inconsistent with Fitzpatrick's story of an ATV mishap.

A jury found appellant guilty of first-degree homicide, but the trial court granted Fitzpatrick's post-sentence motion for judgment of acquittal. The Commonwealth appealed. We found sufficient evidence to sustain the conviction, and reversed. With respect to intent, we stated:

> Regarding the element of intent, our Supreme Court has long explained that "murder may be committed without a motive, either actual or apparent, but **an established motive may go to prove the related intent**[,] just as an absence of motive may be used to deny the existence of intent." ***Commonwealth v. Jones***, 355 Pa. 522, 50 A.2d 317, 321 (1947) (citations omitted) (emphasis added). In addition, we observe the following:

> When there is no direct evidence of intent to kill, the fact-finder may glean the necessary intent from the act itself and from all surrounding circumstances. **Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another.** Death caused by strangulation is sufficient to infer the specific intent required for a conviction of first degree murder.
>
> *Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492, 500 (1997) (citations omitted) (emphasis added).

*Id*. at 567-68 (emphases in original).

Applying these principles, we find that the testimony establishing that the victim owed Appellant money for a drug debt supplied circumstantial evidence from which the jury could infer an intent to kill. While the circumstantial evidence in *Fitzpatrick* was doubtlessly stronger than this case, herein there was direct evidence of Appellant's use of a deadly weapon on the victim's head. Taken together, the evidence supports the jury's finding that Appellant had a specific intent to kill. Therefore, Appellant's claim fails.

Appellant's second claim challenges the weight of the evidence. In order to preserve this issue, "a defendant must present his challenge to the weight of the evidence to the trial court for a review in the first instance." *Commonwealth v. Stiles*, 143 A.3d 968, 980 (Pa.Super. 2016). As noted *supra*, the trial court treated counsel's post-sentence motion, which included a weight claim, as a motion amending the earlier post-sentence

motions timely filed by Appellant *pro se*. We therefore conclude that this claim was preserved for our review.

Our standard of review was explained in **Commonwealth v. Konias**, 136 A.3d 1014, 1022 (Pa.Super. 2016), as follows:

> When we review a weight-of-the-evidence challenge, we do not actually examine the underlying question; instead, we examine the trial court's exercise of discretion in resolving the challenge. **Commonwealth v. Leatherby**, 116 A.3d 73, 82 (Pa.Super. 2015). This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented. **Id.** Simply put, "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." **Id.** A new trial is warranted in this context only when the verdict is "so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Commonwealth v. Morales**, 625 Pa. 146, 91 A.3d 80, 91 (2014).

**Id**. at 1022.

First, Appellant's weight claim includes a challenge to identity, as he argues that the Commonwealth failed to produce physical evidence tying him to the scene of the crime, such as DNA or the recovery of the actual weapon. That is, in truth, a sufficiency argument, and the lack of a weapon is not fatal to the Commonwealth's case.[3]

_____

[3] In any event, Appellant's son's statement indicated his belief that Appellant would have destroyed the weapon.

Appellant's alternative argument extensively challenges the victim's testimony, highlighting inconsistencies in Todd's statements and his inability to firmly state that Appellant was the perpetrator. Additionally, Appellant challenges the credibility of his son's recorded statements, which clearly implicated Appellant as the perpetrator, by arguing that Anthony's statements were coerced and involuntary.

These latter arguments properly attack the weight of the evidence; however, the jury was free to credit or discredit these statements as it saw fit. The trial court determined that the jury's verdict did not shock its sense of justice. We find no abuse of discretion in that ruling.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2017